**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

| | |
|---|---|
| PATRICK C. SHALTRY, I, | Case No. 1:25-cv-13704 |
| *Plaintiff,* | F. Kay Behm<br>United States District Judge |
| *v.* | |
| BRENT BENZING, et al., | Patricia T. Morris<br>United States Magistrate Judge |
| *Defendants.* | |

/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'**
**MOTIONS TO DISMISS (ECF Nos. 16, 22, 24), DENY AS MOOT**
**DUPLICATIVE MOTIONS (ECF Nos. 12, 13), AND DENY PLAINTIFF'S**
**MOTION FOR SANCTIONS (ECF No. 35)**

## I.    RECOMMENDATION

For the reasons explained below, **IT IS RECOMMENDED** the Court

**GRANT** Defendants' motions to dismiss (ECF Nos. 16, 22, 24) and **DENY AS**

**MOOT** Defendant Jessa Sheehan's duplicative motions to dismiss (ECF Nos. 12,

13).   The Undersigned further **RECOMMENDS** the Court **DENY** Plaintiff's

motion for sanctions (ECF No. 35).[1]  If these recommendations are adopted, the case

would proceed against only Defendants Donna Collins and Matt Reyes.

---

[1] Although ECF No. 35 was not docketed as a motion, the Undersigned construes it as a
motion for sanctions.

## II.      **REPORT**

### A.      **Background**

Plaintiff was previously charged in Michigan state court with multiple counts of criminal sexual conduct (CSC) in the second degree pursuant to Mich. Comp. Laws § 750.520c(1)(b) and one count of misdemeanor domestic violence pursuant to Mich. Comp. Laws § 750.81.   (ECF No. 1, PageID.145; ECF No. 19, PageID.369).  A jury acquitted Plaintiff of the CSC charges and found him guilty of only misdemeanor domestic violence; Plaintiff is currently appealing his conviction in the Michigan Court of Appeals.  (ECF No. 19, PageID.370).  Plaintiff now brings numerous claims against several Defendants all of whom were involved with the criminal proceedings (including the judge, prosecutors, investigating detective, his attorney, and probation agents who prepared his pre-sentence investigation report (PSI)) for alleged violations of his constitutional rights, the Americans with Disabilities Act (ADA) and the Rehabilitation Act, Michigan state laws, and more. Further facts will be discussed as necessary below.

Defendant Sheehan filed a motion to dismiss and amended motion to dismiss. (ECF Nos. 12, 13, 16).  Plaintiff then filed an amended complaint as of right, and Sheehan supplemented her motion to dismiss with leave of Court.  (ECF Nos. 19, 27).  Defendants Brent Benzing, Courtney Driscoll,  J. Dee Brooks, Michael Beale, Midland County, and Midland County Jail filed their own motion to dismiss.  (ECF

No. 22).   Defendants Jason Furst and Nicole King have also filed a motion to dismiss.  (ECF No. 24).  Plaintiff has filed numerous responses and motions.  (ECF Nos. 29–35).  The motions to dismiss are now ready for determination.[2]

## B.      Legal Standard

Under Federal Rule of Civil Procedure 12(b)(1), a court's assessment of jurisdictional issues must precede any evaluation of a claim's merits: once jurisdiction "ceases to exist, the only function remaining to the court is that of announcing" its lack of jurisdiction "and dismissing the cause."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *see also Bouye v. Bruce*, 61 F.4th 485, 490 (6th Cir. 2023).  Thus, when a defendant moves to dismiss a complaint under both Rule 12(b)(1) and Rule 12(b)(6), the Rule 12(b)(1) challenge must be addressed first because "the Rule 12(b)(6) challenge becomes moot if [the] court lacks subject matter jurisdiction."  *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).  "Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion."  *Id.*  Eleventh Amendment immunity is a jurisdictional question.  *See Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) ("[R]ather than an affirmative defense, the Eleventh Amendment is a true jurisdictional bar that . . . once raised as a jurisdictional defect, must be decided before the merits").

---

[2] Outstanding service issues will be addressed via order.

If a court finds that it has subject matter jurisdiction, it then may consider whether the complaint states a claim under Rule 12(b)(6) and Rule 8 of the Federal Rules of Civil Procedure.  A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint with regard to whether it states a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When deciding a motion under this subsection, a "court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle [him] to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001).

A complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations omitted).  Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

The Supreme Court has explained the "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id.*  "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

Further, the "court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account."  *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)).  The Sixth Circuit has specifically "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'"  *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)), *overruled on other grounds*, *Swierkiwica v. Sorema, N.A.*, 534 U.S. 506 (2002); *Yeary v. Goodwill Indus.–Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997).

Moreover, when a plaintiff proceeds without counsel, a court must liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even *pro se* complaints must satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Additionally, *pro se* litigants with extensive litigation experience are not entitled to the normal leniency afforded such litigants, especially regarding easily understood rules. *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

Finally, "[t]o plausibly state a cause of action under 42 U.S.C. § 1983, a plaintiff must plead two elements: '(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law.'" *Whitacre v. Adult Parole Auth.*, No. 2:23-CV-3625, 2024 WL 4750214, at *2 (S.D. Ohio Nov. 12, 2024) (quoting *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008)). A plaintiff must make a clear showing that each named defendant was personally involved in the activity that forms the basis of the complaint. *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995). Importantly, liability under § 1983 must be based on more than a theory of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

### C.      Analysis

#### 1.      Defendant Sheehan (ECF Nos. 12, 13, 16, 27, 33)

Sheehan filed a motion to dismiss the claims against her, arguing the complaint was short on facts and had no specific allegations of wrongdoing as to her. (ECF No. 27). Specifically, the amended complaint alleges Sheehan, Plaintiff's ex-wife, made a report to United States Citizenship and Immigration Services (USCIS) that she had been abused by Plaintiff, which he contests was a false accusation. (ECF No. 19, PageID.371). Sheehan also filed an order of restraint against him, "without claim of even one item that Plaintiff had done wrong." (*Id.*). After that, Sheehan took her then 16-year-old daughter to the doctor to falsely report the CSC that was the basis for his criminal charges. (*Id.* at PageID.371–72).

Sheehan is only named in Counts VI, VII, and XV related to Plaintiff's Racketeer Influenced and Corrupt Organizations Act (RICO) claims, which allege that Defendants were involved in the fabrication of evidence, mail and wire fraud, false statements, and conspiracy to deprive him of constitutional rights. (*Id.* at PageID.389, 391, 398). He brings both direct RICO claims under 18 U.S.C. § 1962(c) and RICO conspiracy claims under 18 U.S.C. § 1962(d).

To proceed beyond a motion to dismiss under § 1962(c), a plaintiff must plausibly allege, as to each defendant, that the defendant: (1) conducted, (2) an enterprise, (3) through a pattern (two or more predicate acts), of (4) racketeering

activity.  *Compound Prop. Mgmt., LLC v. Build Realty, Inc.*, 462 F. Supp. 3d 839, 855 (S.D. Ohio 2020); *Kerrigan v. ViSalus, Inc.*, 112 F. Supp. 3d 580, 602 (E.D. Mich. 2015).  Additionally, the plaintiff must allege an injury to his business or property by reason of the RICO violation.  *Compound Prop. Mgmt.*, 426 F. Supp. 3d at 855.

"Under RICO, an enterprise includes 'any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'"  *Id.* at 856 (quoting 18 U.S.C. § 1961(4)).  A plaintiff may allege, as here, an "association-in-fact enterprise," which "is a group of persons associated together for the common purpose of engaging in a course of conduct."  *Id.* at 857 (quotation omitted).  This enterprise must contain at least three features: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose.  *Id.*  Additionally, the group's common purpose must be separate from the pattern of racketeering activity in which it engages.  *Id.*

As for the conduct element, a plaintiff must allege that each defendant conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs.  To do so requires proof that the defendant participated in the operation or management of the enterprise by making decisions on behalf of the enterprise or knowingly carrying them out.  *Kerrigan*, 112 F. Supp. 3d at 602–03.  In other words,

"defendants must have conducted or participated in the conduct of the *enterprise's* affairs, not just their *own* affairs." *Id.* (citation modified).

Here, Plaintiff has failed to sufficiently allege a direct RICO claim against Sheehan for a number of reasons. The clearest of which is that there is no enterprise alleged, nor was Sheehan alleged to be conducting any conduct on behalf of the unpled enterprise. Specifically, Plaintiff alleges Sheehan was acting for her own good, not on behalf of any enterprise. (*See* ECF No. 19, PageID.371–72 (alleging Sheehan made false reports in order to stay in the country after a divorce and to gain control of the divorce)). This claim should therefore be dismissed against Sheehan.

Plaintiff also brings two RICO conspiracy claims against Sheehan. To state such claims, a plaintiff must successfully allege all elements of a RICO violation "as well as alleging the existence of an illicit agreement that included the conspiracy defendant to violate the substantive RICO provision." *Compound Prop. Mgmt.*, 462 F. Supp. 3d at 858; *Kerrigan*, 112 F. Supp. 3d at 611. Because Plaintiff fails to successfully allege a RICO violation, these claims should also be dismissed against Sheehan.

Additionally, Plaintiff brings a Michigan state law claim of abuse of process against Sheehan.[3] (ECF No. 19, PageID.387–88). An action for "'abuse of process

---

[3] Plaintiff's response to Sheehan's motion to dismiss also argues his complaint states claims against Sheehan for First Amendment retaliation, Fourteenth Amendment due process violations, § 1983 conspiracy, and other "state-law torts." (ECF No. 33, PageID.637).

lies for the improper use of process after it has been issued, not for maliciously causing it to issue.'" *House of Providence v. Meyers*, 458 F. Supp. 3d 621, 643 (E.D. Mich. 2020) (quoting *Spear v. Pendill*, 130 N.W. 343, 344 (Mich. 1911)). Here, like in *Spear*, even if Sheehan acted willfully and maliciously in filing false reports, she "had no control over said warrant and criminal prosecution after making the complaint." *Spear*, 130 N.W. at 344. Plaintiff's only allegation against Sheehan is that she "caused [his] arrest, prosecution, and punishment" with her false reports. (ECF No. 33, PageID.636). These allegations fail to state a claim for abuse of process under Michigan law. The Court should therefore **GRANT** Sheehan's motion to dismiss (ECF No. 16)[4] and she should be dismissed from the case.

As for Plaintiff's motion for sanctions against Sheehan's attorney (ECF No. 35), the Undersigned recommends the Court **DENY** it. Plaintiff seems to argue that Sheehan's original arguments for dismissal contradicted the allegations. However, he cites to his amended complaint and not to Sheehan's supplemental motion which incorporated Plaintiff's new factual allegations and argued the claims should still be

---

However, his amended complaint does not allege these claims against Sheehan, and the Undersigned will not conduct any analysis on these unpled claims. *See, e.g.*, *Fuhr v. Sch. Dist. of City of Hazel Park*, 837 F. Supp. 2d 675, 681 n.6 (E.D. Mich. 2011) (refusing to consider unpled claims).

[4] ECF No. 16 is Sheehan's amended motion to dismiss and ECF No. 27 is her supplemental motion after Plaintiff amended his complaint. The amended motion supersedes Defendant Sheehan's earlier motions to dismiss (ECF Nos. 12, 13). *United States v. Hsieh*, No. 18-20754, 2020 WL 1873594, at *1 (E.D. Mich. Apr. 15, 2020). They should therefore be **DENIED AS MOOT**.

10

dismissed.  To the extent Sheehan's attorney filed multiple motions to dismiss and corrected motions, the Undersigned agrees counsel could have been more careful in double checking the briefs so he would not have had to file multiple corrected versions.  Nevertheless, the Undersigned finds no basis for sanctions.

### 2.    Defendant Beale

Defendant Beale was the judge who presided over Plaintiff's criminal case. Plaintiff alleges Beale sentenced him pursuant to a false PSI and for improper reasons.  (ECF No. 19, PageID.365, 368).  Beale also held a hearing on a motion in limine filed to exclude Plaintiff's service dog from trial; although Beale ultimately ruled the service dog would be allowed to stay.  (*Id.* at PageID.375–77).  Plaintiff brings First Amendment retaliation, Eighth Amendment cruel and unusual punishment, ADA, Fourteenth Amendment due process, abuse of process, judicial misconduct, and fraud on the court claims against him.  Beale argues the claims against him are barred by the Eleventh Amendment and absolute judicial immunity. (ECF No. 22, PageID.428–33).

Judges are generally absolutely immune from suit for money damages. *Mireles v. Waco*, 502 U.S. 9, 9 (1991).  Judicial immunity is only overcome if (1) the action was not taken in the judge's judicial capacity, or (2) if the action was taken in the complete absence of all jurisdiction.  *Id.* at 11–12.  Whether an act is judicial depends upon whether it is a function normally performed by a judge and to the

11

expectations of the parties, *i.e.*, whether the parties dealt with the judge in their judicial capacity. *Id.* at 12. Michigan circuit courts are courts of general jurisdiction and unquestionably have jurisdiction over felony and misdemeanor cases. *People v. Lown*, 794 N.W.2d 9, 23 (Mich. 2011) (citing Mich. Comp. Laws § 767.1).

There is no question here on the first factor: the hearing on Plaintiff's service dog, his criminal case, and his sentencing were all actions taken in Beale's judicial capacity as the judge presiding over Plaintiff's criminal trial. As for the second exception to immunity, Plaintiff alleges Beale did not have subject matter jurisdiction when he sentenced him based on a false PSI, but none of Plaintiff's citations are applicable to his arguments. (*See* ECF No. 19, PageID.366–68). There is no indication that Beale lost subject matter jurisdiction over Plaintiff's criminal case, even if there were false statements contained in his PSI. Additionally, to the extent Plaintiff's claims are against Beale in his official capacity, they are akin to a suit against the State of Michigan, which is barred by the Eleventh Amendment and should be dismissed. *Ward v. City of Norwalk*, 640 F. App'x 462, 465 (6th Cir. 2016). Therefore, all federal claims against Beale should be dismissed.

Finally, Plaintiff lists several claims against Beale based on Michigan state law: abuse of process, judicial misconduct, and fraud/misrepresentation. "It is well settled that judges are accorded absolute immunity from liability for acts performed in the exercise of their judicial functions." *Serven v. Health Quest Chiropractic,*

*Inc.*, 900 N.W.2d 671, 675 (Mich. Ct. App. 2017) (internal quotation omitted). As discussed above, all conduct asserted against Beale occurred while he was exercising his judicial functions (*e.g.*, motions hearings, sentencing). Beale is absolutely immune from liability for these actions and the claims against him should be dismissed. The Court should therefore **GRANT** Defendant Beale's motion to dismiss. (ECF No. 22).

### 3.   Defendants Driscoll and Brooks

Plaintiff sues Courtney Driscoll and J. Dee Brooks, the prosecutors in his case. (ECF No. 19, PageID.364). He alleges they "engaged in investigative, retaliatory, and supervisory conduct outside the scope of prosecutorial advocacy." (ECF No. 19, PageID.368). Specifically, Driscoll, as representative of Brooks, took on the role of law enforcement by investigating and lying about Plaintiff's service dog in an attempt to exclude the dog from trial. (*Id.* at PageID.368, 374–77). Brooks ratified this conduct. (*Id.* at PageID.377). Additionally, when Judge Beale denied probable cause for another count of CSC, Driscoll added a misdemeanor count of domestic assault on the same conduct, circumventing the judge. (*Id.* at PageID.369, 379–84).

"Absolute [prosecutorial] immunity is a narrow, but powerful, protection given to prosecutors when they act as advocates participating or preparing for a judicial proceeding." *Smith v. Wayne Cnty.*, 147 F.4th 613, 619 (6th Cir. 2025). "[P]rosecutorial immunity has a long reach—it extends even to 'unquestionably

illegal or improper conduct,' including instances where a defendant is genuinely wronged." *Price v. Montgomery Cnty*, 72 F.4th 711, 719 (6th Cir. 2023) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 426 (1976)).   The Sixth Circuit applies "a 'functional approach' that provides a prosecutor with absolute immunity for [his or] her conduct insofar as it is 'intimately associated with the judicial phase of the criminal process,' such as when a prosecutor 'initiat[es] a prosecution . . . .'" *Smith*, 147 F.4th at 619 (quoting *Imbler*, 424 U.S. at 430–31); *see also Kennedy v. Grattan Tp.*, No. 06-cv-657, 2007 WL 1108571, at *5 (W.D. Mich. Feb. 14, 2007) ("The decision to prosecute or not prosecute, even if malicious, enjoys absolute immunity."), *report and recommendation adopted*, 2007 WL 1108566 (W.D. Mich. Apr. 10, 2007); *Price*, 72 F.4th at 719 (prosecutorial tasks "necessarily entails making judgment calls as to how pre-trial matters are handled, trials are conducted, witnesses are used, and evidence is presented").   Absolute immunity also extends to supervisory attorneys when the claims focus on administrative obligations connected with the conduct of a trial.  *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009). Absolute prosecutorial immunity does not extend to actions not intimately associated with the judicial process such as "investigative efforts to obtain an arrest warrant, authorize wiretaps, or advise the police," or certain acts before or after the criminal proceeding. *Price*, 72 F.4th at 711.  In these circumstances, prosecutors receive only qualified immunity.  *Id.*

14

Plaintiff's allegations against Driscoll and Brooks related to any decision to charge him without probable cause, withhold exculpatory evidence during the case, file motions related to his service dog, or continue his prosecution enjoy absolute immunity, as they are actions intimately associated with the judicial phase of Plaintiff's criminal trial.   To the extent Plaintiff alleges Driscoll acted as an investigator, which may be outside the scope of absolute immunity, his allegation is conclusory and wholly unsupported by any factual allegations.   (ECF No. 19, PageID.368 ("Defendant Driscoll as representative of Defendant Brooks, conducted an investigation against Plaintiff, in an attempt to exclude his service dog.")). Similar to Defendant Beale, Plaintiff's claims against Driscoll and Brooks in their official capacity are barred by the Eleventh Amendment as Plaintiff only seeks monetary or retrospective relief.  *Boone v. Kentucky*, 72 F. App'x 306, 307 (6th Cir. 2003).

The only claims that survive the above absolute immunity analysis are Plaintiff's ADA and Rehabilitation Act claims against Driscoll and Beale in their official capacities.  *See Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009). Eleventh Amendment immunity has been abrogated to a limited extent for violations of the ADA.  *Babcock v. Michigan*, 812 F.3d 531, 534 (6th Cir. 2016).  For example, Eleventh Amendment immunity has been held to be abrogated when an ADA Title II claim alleges a denial of the fundamental right of access to the courts or when the

15

conduct also violates the Fourteenth Amendment. *Id.* There is a three-part test used to assess whether the Eleventh Amendment proscribes a Title II claim:

> [D]etermine . . . on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.* at 534–35.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. There are two types of claims cognizable under Title II of the ADA: claims for intentional discrimination and claims for a reasonable accommodation. *Roell v. Hamilton Cnty.*, 870 F.3d 471, 488 (6th Cir. 2017). A prima facie case of intentional discrimination under Title II requires a plaintiff to show: (1) he has a disability; (2) he is otherwise qualified; and (3) he was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of his disability. *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015). "Both the Americans with Disabilities Act and the Rehabilitation Act require the challenged discrimination to occur *because of* disability, which is another way of saying that the plaintiff must establish a but-for relationship between the protested act and the individual's disability."

*Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 682 (6th Cir. 2016) (emphasis in original).  Finally, "[t]he Rehabilitation Act sets the higher bar [than the ADA], requiring plaintiffs to show that the defendant's acts were done '*solely* by reason of' the disability."  *Gohl*, 836 F.3d at 682 (emphasis in original).  Thus, if Plaintiff's allegations do not support a claim under the ADA, they do not support a claim under the Rehabilitation Act.  *See Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 324 (6th Cir. 2023) ("Because Plaintiff has failed in the instant case to meet the less stringent causation standard under the ADA, we analyze her claims under the ADA and Rehabilitation Act together. . . .  Thus, if Defendant is entitled to summary judgment on the ADA claim, then it is also entitled to summary judgment on the Rehabilitation Act . . . claims.").

Plaintiff alleges that Driscoll's filing of a motion in limine to exclude his service dog from his criminal trial—and the court holding a hearing on the motion where he had to disclose private medical information—excluded him from full and equal participation in his judicial proceedings and violated his constitutional right to privacy, even though he prevailed at the hearing and was never deprived of his service dog.  (ECF No. 19, PageID.396–97).  The first part of his claim is easily disposed of, as Plaintiff was never denied a concrete opportunity to engage in the judicial process. *Accord Babcock*, 812 F.3d at 539 (holding plaintiff lacked standing to assert a denial of access claim for failing to allege she was ever denied an

opportunity to engage in the judicial process). Plaintiff's own allegations show he was able to fully participate in the criminal proceedings against him, including the hearing to determine whether his service dog would be allowed to attend trial. (*See also* ECF No. 1, PageID.60–61, 94–95 (hearing transcript attached to Plaintiff's original complaint showing his service dog had been allowed to attend all court proceedings up to and including the motion in limine hearing)). Accordingly, Plaintiff has not sufficiently pled that he was excluded from participation in any court proceeding.

Assuming all else is properly pled, Plaintiff has also failed to state any claims for violations of his right to privacy. The right to privacy rooted in substantive due process protections includes an "interest in avoiding disclosure of personal matters." *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (internal quotation omitted). Nevertheless, "'the Constitution does not encompass a general right to nondisclosure of private information.'" *Thomas v. Mich. Dep't of Corr.*, No. 24-cv-1261, 2024 WL 5244662, at *5 (W.D. Mich. Dec. 30, 2024) (quoting *J.P. v. DeSanti*, 653 F.2d 1080 (6th Cir. 1981)). The Sixth Circuit thus requires a plaintiff to "demonstrate that the interest at stake relates to those personal rights that can be deemed fundamental or implicit in the concept of ordered liberty." *Lambert*, 517 F.3d at 440 (internal quotations omitted).

18

Plaintiff alleges he was forced to disclose "sensitive medical information." (ECF No. 19, PageID.397).  This broad, conclusory allegation is insufficient to state a claim under the Fourteenth Amendment.  *See Thomas*, 2024 WL 5244662, at *4–*7 (dismissing claim against prison guard who disclosed plaintiff's HIV status to co-workers in hearing of other prisoners and collecting cases).  Additionally, even the transcript for the motion in limine hearing fails to show any type of sensitive personal health information above and beyond what the Sixth Circuit has already held is insufficient to state a claim under the Fourteenth Amendment.  For example, at the hearing Plaintiff was asked about whether his service dog was registered or certified; what the nature of his disability was; how his service dog assists him; whether the dog was housebroken; and whether his dog had been asked to leave other court functions before.  (ECF No. 1, PageID.71–85).  This is not the type of information the Sixth Circuit has previously held to be of a constitutional dimension, such as where the release of information could lead to bodily harm or where it was of a sexual, personal, and humiliating nature.  *See Lee v. City of Colombus*, 636 F.3d 245, 261 (6th Cir. 2011) ("Under our interpretation of privacy rights, we have not yet confronted circumstances involving the disclosure of medical records that, in our view, are tantamount to the breach of a fundamental liberty interest under the Constitution." (citation modified)); *see also Babb v. Osbourne*, No. 16-cv-P29, 2016 WL 4421731, at *10 (W.D. Ky. Aug. 17, 2016) (dismissing claim where nurse

19

spoke about plaintiff's mental health issues in front of others).  Plaintiff has therefore failed to state a claim under the ADA or the Rehabilitation Act sufficient to overcome the Eleventh Amendment and these claims should be dismissed.

### 4.      Defendant Benzing

Plaintiff brings several claims against Brent Benzing, the police detective who investigated the complaints made against Plaintiff, alleging Benzing "fabricated evidence and initiated charges, violating common police practice and law."  (ECF No. 19, PageID.369).   Plaintiff alleges Benzing "fabricated reports, omitted exculpatory facts, and transmitted false information to the Prosecutor's Office."  (*Id.* at PageID.373).  Specifically, he relied on an uncorroborated victim statement alone in seeking charges and ignored "strong circumstantial evidence" in Plaintiff's favor—his filing for divorce just three days before the CSC allegations against him were made.  (*Id.*).  Finally, Benzing took almost a year to complete and submit his investigation.  (*Id.* at PageID.374).  Plaintiff brings a Fourteenth Amendment due process claim, an abuse of process claim, and three RICO claims against Benzing.

Plaintiff's amended complaint does not include sufficient facts to state any claim against Benzing.  Instead, Plaintiff's allegations are vague and conclusory, with almost no facts alleged against Benzing.  *See Iqbal*, 556 U.S. at 686.  The only fact alleged by Plaintiff is that Benzing relied on an uncorroborated victim statement, which he concedes is expressly allowed under Michigan law.  *See* Mich. Comp.

20

Laws § 750.520h.  There are no other facts directly related to Benzing that would support any of the claims made against him.  Therefore, the Court should **GRANT** Benzing's motion to dismiss (ECF No. 22, PageID.20–24) and dismiss all claims against him.

### 5.      Defendants Midland County and Midland County Jail

Plaintiff brings a *Monell*[5] claim against Defendant Midland County.  (ECF No. 19, PageID.394–95).   Specifically, Plaintiff alleges Midland County "maintained policies, customs, or practices that caused constitutional violations, including tolerance of fabricated evidence and ADA discrimination."  (*Id.*).

Municipalities cannot be held vicariously liable for the conduct of their employees.  *Shehee v. Lutrell*, 199 F.3d 295, 300 (6th Cir. 1999).  To hold a municipality liable under § 1983, a plaintiff must "demonstrate that the alleged federal violation occurred because of a municipal policy or custom."  *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell*, 436 U.S. at 694); *see also Lipman v. Bush*, 974 F.3d 726, 734 (6th Cir. 2020).

Plaintiff alleges no facts showing a specific policy or custom of Midland County violated his rights.  As such, he fails to state a claim against Midland County and the Court should **GRANT** its motion to dismiss the claim against it.  (ECF No. 22, PageID.448–49).  *Accord Verble v. Morgan Stanley Smith Barney, LLC*, 676 F.

---

[5] *Monell v. Dep't of Soc. Servs*, 436 U.S. 658 (1978).

21

App'x 421, 427 (6th Cir. 2017) (affirming dismissal where complaint failed to state sufficient facts to state a claim for relief plausible on its face).

To the extent Plaintiff has named Midland County Jail as a Defendant, this Defendant should be dismissed (1) as an improper party and (2) because no claims are even alleged against it. *Woodford v. Genesee Cnty. Jail*, No. 23-cv-13107, 2024 WL 4599333, at *2 (E.D. Mich. Sept. 25, 2024), *report and recommendation adopted*, 2024 WL 4595121 (E.D. Mich. Oct. 28, 2024).

### 6. Defendants Furst and King

Defendant King is the parole agent who prepared Plaintiff's PSI report. Defendant Furst is King's supervisor. Plaintiff alleges "Defendants King and Furst authored and ratified a false PSI report, depriving Plaintiff of due process." (ECF No. 19, PageID.369, 378). Plaintiff then alleges he was sentenced based on the false PSI, which resulted in retaliatory and discriminatory punishment. (*Id.* at PageID.378). Plaintiff's conclusory allegations include that the PSI was "[p]urposely poorly written to mislead" and "[p]urposely included false information to mislead." (*Id.*). Plaintiff told King and Furst of these falsities, but they refused to make any meaningful corrections. (*Id.*). The false PSI was then submitted to the court with no meaningful opportunity to challenge or correct it, and the falsities were

22

used for sentencing.[6]  (*Id.* at PageID.379).  Plaintiff alleges King and Furst violated

his Fourteenth Amendment Due Process rights, abused the judicial process, and

violated RICO.  Against Furst alone, Plaintiff also alleges a due process claim and a

supervisory liability claim.

Furst and King argue they are entitled to absolute quasi-judicial immunity for

the alleged conduct.  (ECF No. 24, PageID.496–98).  As discussed above, judges are

generally absolutely immune from personal liability for acts committed within their

jurisdiction; "absolute immunity has been extended to individuals performing duties

'closely associated with the judicial process.'"  *Young v. Selsky*, 41 F.3d 47, 51 (6th

---

[6] The Undersigned notes that this allegation is directly contradicted by the sentencing
transcript Plaintiff attached to his original complaint, and the Court therefore need
not accept this fact as true.  "'[I]f a factual assertion in the pleadings is inconsistent
with a document attached for support,' a court is not bound to accept as true the
plaintiff's factual allegation. *See Williams v. CitiMortgage, Inc.*, 498 F. App'x 532,
536 (6th Cir. 2012) (collecting cases)." *Croce v. New York Times Co.*, 930 F.3d 787,
792 (6th Cir. 2019).  At the beginning of the sentencing hearing, Judge Beale gave
Plaintiff an opportunity to notify him of any inaccuracies in the PSI. (ECF No. 1-2,
PageID.225).  Plaintiff's attorney notified the court that he and Plaintiff had had an
opportunity to go "through the report line by line, page by page, and we have
discussed some changes that we are gonna ask the [c]ourt, either additions and/or
changes." (*Id.*).  He then asked for ten changes, nine of which were ordered. (*Id.* at
PageID.225–30).  The only fact the judge did not agree to change was a narrative
discussing things Plaintiff had said to King. (*Id.* at PageID.229).  But even this was
conceded to be factually accurate as to what Plaintiff had said. (*Id.*).  Because the
transcript shows Plaintiff had a full and fair opportunity to challenge and correct his
PSI, the Court need not accept his allegation to the contrary as true.  The transcript
also brings into question whether there remained any other falsities or inaccuracies
in the PSI. As Plaintiff's counsel discussed at sentencing, "those [ten changes were]
all the factual changes and additions that we would ask." (*Id.* at PageID.230).

Cir. 1994) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)). "For example, a federal probation officer preparing presentence reports acts as an arm of the court and thus has absolute immunity to personal liability for damages." *Id.* (quotation omitted).

Here, all of Plaintiff's claims against Furst and King stem from their preparation or approval of the PSI. This is clearly a function done as an arm of the court and Plaintiff's claims are therefore barred by immunity. *See e.g.*, *Jamison v. Holly*, No. 14-cv-13394, 2015 WL 163995, at *4 (E.D. Mich. Jan. 13, 2015); *Willis v. Mosley*, No. 07-cv-214, 2007 WL 2238672, at *1 (W.D. Mich. May 4, 2007) (collecting cases); *Smith v. Johnston*, 173 F.3d 430 (table), 1999 WL 137619, at *3 (6th Cir. 1999); *Hullett v. Wiley*, No. 06-cv-77, 2006 WL 335694, at *2 (W.D. Mich. Feb. 13, 2006). Moreover, even if not barred by immunity, these claims would be barred by *Heck v. Humphry*, 512 U.S. 477 (1994), as the underlying falsity Plaintiff alleges would imply the invalidity of his conviction, which has not been reversed, expunged, or declared invalid. *Benner v. Carrill*, No. 07-cv-11606, 2008 WL 2696138, at *6 (E.D. Mich. July 2, 2008). Therefore, the Court should **GRANT** Furst and King's motion to dismiss (ECF No. 24) and dismiss them from the case.

### D.    Conclusion

For these reasons, **IT IS RECOMMENDED** the Court **GRANT** Defendants' motions to dismiss (ECF Nos. 16, 22, 24) and **DENY AS MOOT** Defendant

Sheehan's duplicative motions to dismiss (ECF Nos. 12, 13). The Undersigned further **RECOMMENDS** the Court **DENY** Plaintiff's motion for sanctions (ECF No. 35).

## III.    REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains.

25

Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 27, 2026

<u>S/PATRICIA T. MORRIS</u>
Patricia T. Morris
United States Magistrate Judge

26